WALTERS *v.* STONEWALL COTTON MILLS.[*]

(Division A.   Oct. 20, 1924.)

[101 So. 495.   No. 24295.]

1. MASTER AND SERVANT. *Rule stated as to liability of private employers or police officers for their injury of others.*

Where persons, natural or artificial, with the consent of the state, employ police officers to represent them in protecting and preserv-

ing their property and maintaining order on their premises, and such officers are engaged in the furtherance of their duties acting within the scope of their powers, they become and are the servants of such private persons and corporations ,and for any negligent or wanton acts committed by them in the line of their duties to the injury of others their employers are liable.

2. MASTER AND SERVANT. *Whether deputy sheriff employed by mill company to enforce law acted as servant of company held for jury.*
In an action against a cotton mill company for an alleged unlawful assault upon the plaintiff committed by a deputy sheriff in the performance of his official duties, where the property, officers, and mill hands of such cotton mill company constituted substantially all the property and inhabitants of an unincorporated village, and the company employed the deputy sheriff to police the village and arrest and prosecute violators of the criminal laws of the state committed therein and paid him a salary for his services to supplement the perquisites of his office, which salary constituted his principal compensation, it was a question for the jury whether the deputy sheriff in the performance of his duties acted primarily as an officer or as the servant of the cotton mill company.

3. MASTER AND SERVANT. *That servant's wrongful act in furtherance of master's business was unauthorized or contrary to instructions does not relieve master from liability.*
In order to hold the master liable for the wrongful act of his servant it is not necessary to show that the act in question was either expressly or impliedly authorized by the master. If the servant, when he committed the wrongful act, was acting in furtherance of the master's business, for which he was employed, the master is liable, although the servant in doing the act, contrary to the instructions of the master, went beyond his authority.

4. EVIDENCE. *Offering party may have evidence susceptible of two interpretations submitted to jury to determine truth.*
Where the evidence of a witness is susceptible of two interpretations, one favorable to the party offering him, the other unfavorable, the offering party is not barred from the use of such favorable evidence; he has the right to have all the evidence submitted to the jury, who will determine which of the varying statements of the witness is true.

5. PRINCIPAL AND AGENT. *Declarations of alleged agents off witness stand cannot be testified to by others to show agency and its scope; alleged agent can testify as to his agency and scope thereof.*

The principle that neither agency nor the scope thereof can be proven alone by declarations of the agent means that the declarations of the agent off of the witness stand cannot be testified to by others in order to show the agency and its scope. The alleged agent can be put upon the witness stand as any other witness for the purpose of proving both his agency and the scope thereof.

6. MASTER AND SERVANT. *Evidence of extent of authority exercised by mill company in village held admissible on issue of whether police officer, in assaulting plaintiff, acted as its servant.*

On the issue of whether or not a person committing an unlawful assault upon the plaintiff was acting as a police officer or as the servant of the defendant, a cotton mill corporation, evidence tending to show the extent of authority exercised by the defendant in and about the village ,of which its plant, officers, and mill hands constituted the larger part of the property and inhabitants of such village, is admissible.

*Headnotes 1. Master and Servant, 26 Cyc, p. 1521; 2. Master and Servant, 26 Cyc, p. 1576; 3. Master and Servant, 26 Cyc, p. 1535; 4. Evidence, 22 C. J., section 91; 5. Agency, 2 C. J., section 689, 692; 6. Master and Servant, 26 Cyc, p. 1573 (1926 Anno).

APPEAL from the circuit court of Clarke county.

HON. C. C. MILLER, Judge.

Suit by Edgar E. Walters against the Stonewall Cotton Mills. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Floyd & Easterling,* for appellant.

The court erred in excluding all of the plaintiff's evidence and directing a verdict for the defendant. The precise question involved was (1) whether or not Nicholson was an employee of the defendant company, the appellee here, and (2) whether or not in committing the injury complained of he was acting within the scope of his employment. If the evidence shows these facts, or tends to prove these facts, or if the facts proven and the legitimate inferences and deductions drawn therefrom tend to prove these facts, the case should have been submitted to

the jury, and the action of the court in excluding the evidence was error.

On the question of the liability of the master for the act of a servant, who claims to have been acting as special police officer or deputy sheriff, we refer the court to 18 R. C. L., page 768, section 246, and authorities cited in the note.

The record evidence demonstrates beyond a reasonable doubt that at the time of the assault the said Nicholson was in the employ of the said Stonewall Cotton Mills to keep the peace, and that in ordering the appellant and his companions from the premises of the Stonewall Cotton Mills he was acting in the line of his employment and in the scope of his duty, and his acts were the same nature and character as that shown to have been performed by him prior thereto, and evidently which all understood to have been the very purpose for which he was employed. This being true we cannot conceive upon what theory the plaintiff's evidence was excluded. Authorities announcing the law applicable include: *Sharp* v. *Erie Railroad Company*, 184 N. Y. 100, 6 Am. & Eng. Anno. Cases, 350; 1 Thomas on Negligence, 673; 1 Thompson on Negligence, secs. 615, 616; *Magar* v. *Hammond*, 183 N. Y. 387, 76 N. E. 474. See also the note to the *Sharp* v. *Erie R. R. Company, supra,* 6 Am. & E. Ann. Cases, pages 252, 253; *King* v. *Illinois Central Railroad Company,* 69 Miss. 245, 10 So. 42; *Rand* v. *Butte Elec. Ry.,* 40 Mont. 398, 107 Pac. 87; *Conchin* v. *El Paso & S. W. R. R. Co.,* 108 Pac. 260, 28 L. R. A. (N. S.) 88; *Milton* v. *Mo. Pac. R. R. Co.,* 4 L. R. A. (N. S.) 282 and notes. *Smidt* v. *Vanderveer,* 110 App. Div. 758, 97 N. Y. Supp. 441; *Ploof* v. *Putman,* 26 L. R. A. (N. S.) 27, 75 Atl. 277; *Johnson* v. *Chicago, St. Paul M. & O. Ry. Co.,* 130 Wis. 492, 110 N. W. 424; *New Ellersie Fishing Club* v. *Stewart,* 123 Ky. 8, 9 L. R. A. (N. S.) 475; *Grant* v. *Singer Mfg. Co.,* 190 Mass. 489, 6 L. R. A. (N. S.) 567.

The law touching the liability of a master for the tort of a servant acting within the scope of his authority is

discussed with some wealth of detail in *Barnum* v. *V. S. & P. R. R. Co.*, 85 Miss. 426, 70 L. R. A. 627. See, also, *Field* v. *Lancaster Cotton Mills*, 11 L. R. A. (N. S.) 823; *McKain* v. *B. & O. R. R. Co.*, 23 L. R. A. (N. S.) 289, and extensive note thereunder; *Dixon* v. *Waldron*, 135 Ind. 507, 41 Am. State Rep. 440, 35 N. E. 1, 24 L. R. A. 483.

II. But we submit that the record in this case fails to show that J. T. Nicholson was a deputy sheriff. He claimed to be acting as a special deputy sheriff, but we submit that "there is no such animal." Under the law a deputy sheriff is a public officer, and under section 3081 of Hemingway's Code, every sheriff has the power to appoint one or more deputies. But every such appointment must be in writing, and after he is appointed, in writing, by the sheriff, such deputy, before he enters on the duties of his office, shall take and subscribe the oath to faithfully execute the office of deputy sheriff according to the best of his skill and judgment, and it is provided that the appointment as deputy, with a certificate of the oath, shall be filed and preserved in the office of the clerk of the board of supervisors. By reference to the testimony of the chancery clerk, who is also the clerk of the board of supervisors, the court will see that there was no such appointment in writing. No oath or bond was ever filed by Nicholson.

III. The evidence in this case shows that for the full space of one year after this unprovoked assault on the part of Nicholson he was not discharged by the company, but he was still continued in the employment of the company, and they were still carrying his name on the pay roll.

Under the authority of *Pullman* v. *Alexander*, 117 Miss. 348, 78 So. 293, the jury would have been justified in inferring a ratification of the agent's wrongful and abusive conduct by the principal from the fact that the servant was continued in the employment of the principal after notice of the commission of the willful wrong.

Upon a motion to exclude all of the testimony, not only the facts expressly testified to, but all inferences necessary and logically to be deducted therefrom are to be taken as true in favor of the parties against whom such motion is interposed. *Alexander* v. *Zeigler,* 84 Miss. 560, 36 So. 536; *Fore* v. *A. & B. Ry. Co.,* 87 Miss. 211, 39 So. 493 and 690; *State* v. *Spengler,* 74 Miss. 129, 21 So. 4; *I. C. R. R. Co.* v. *Beems,* 70 Miss. 11, 12 So. 23; *Anderson* v. *Telephone etc.,* 86 Miss. 341, 38 So. 786.

If it is considered the evidence in the instant case made out a *prima-facie* case for the plaintiff, the motion to exclude should not have been allowed. *Rhymes* v. *Jackson & Eastern R. R. Co.,* 85 Miss. 140, 37 So. 708; *Bell* v. *Southern Ry. Co.,* 94 Miss. 440, 49 So. 120; *Skipwith* v. *Mobile & Ohio R. R. Co.,* 95 Miss. 50, 48 So. 964; *Byers* v. *McDonald,* 99 Miss. 42, 54 So. 664; *Roman* v. *Vicksburg, etc.,* 39 So. 781; *Power Company* v. *N. O. & N. E. R. R. Co.,* 40 So. 65; *Ellige* v. *Gray,* 41 So. 2; *Bryant* v. *Enochs Lumber Co.,* 94 Miss. 454; *Bolling* v. *Red Snapper Sauce Company,* 97 Miss. 785.

*H. F. Case* and *William Edwards,* also for appellant.

On the facts, agency is clearly proved to exist, but, if it be said it is not clearly established, then the logical inferences and deductions which are to be reasonably drawn therefrom should have been submitted to the jury to pass upon. 21 R. C. L. 820; 2 C. J. 960, par. 731; *Watkins* v. *Sims,* 88 So. (Fla.) 764; *Capri* v. *Faircloth,* 17 Ala. App. 130, 82 So. 578; *Robinson* v. *Green,* 148 Ala. 434, 43 So. 797; *Roberts* v. *Williams,* 198 Ala. 290, 73 So. 502; *U. S. Cast Iron Pipe & Foundry Co.* v. *Caldwell,* 94 So. (Ala.) 540; *Clarke & Barker* v. *Eufaula Brick Works,* 88 So. 669; citing 21 R. C. L. 822, par. 6, and other authorities.

This court held in *Russell* v. *Palentine Ins. Co.,* 106 Miss. 290, 63 So. 644, that the fact of agency may be assumed from the natural improbability that one should without authority assume to act for another for a considerable length of time and from that fact that such

conduct would naturally become known by the purported principal.   See, also, *McCloskey Bros.* v. *Hood Milling Co.,* 119 Miss. 92, 80 So. 492.

*Marion W. Reily,* for appellee.

Notice was filed under the general issue, setting up the defense that Nicholson was not the agent of appellee, and was performing no duty for appellee at the time of the difficulty, and that the appellee was in no way responsible for his acts.   Of course, in passing upon the action of the trial court in excluding testimony and directing a verdict for appellee, we must accept the testimony which is reasonable and believable, and which is in favor of appellant as true, and treat the motion which was sustained by the trial court as a demurrer to the testimony.

I refer the court to the following cases: *Express Company* v. *Fitzner,* 59 Miss. 581, 42 Am. Rep. 379; *Ry. Co.* v. *Latham,* 72 Miss. 34, 16 So. 757; *Richburger* v. *Express Co.,* 73 Miss. 170, 18 So. 922; *American Express Co.* v. *Wright,* 92 So. 342; *Martin Bros.* v. *Murphree,* 86 So. 691; *Davis* v. *Price,* 97 So. 557.

But was it proved that Nicholson was in the employ of appellee?   The truth about the matter is, that the money paid to Nicholson was simply an appropriation to law and order, made by appellee, and Nicholson having been appointed by the sheriff, was the beneficiary.

Nicholson collected fees as other deputy sheriffs throughout the county.   R. 70.   I will not discuss with the court the question that he may not have made bond, nor will I discuss the ability of the sheriff as to appointing him as deputy sheriff.   He was a *de facto* deputy sheriff, and so far as Nicholson and the sheriff knew, was as much a deputy sheriff as any other deputy sheriff in the country.

There is no proof in the record in the case at bar that Nicholson was vested with any authority whatever by the

appellee touching the appellant or any one situated as the appellant was situated. See *I. C. Ry. Co.* v. *Latham,* 16 So. 757; *Rounds* v. *Railroad Company,* 64 N. Y. 136.

In the case at bar, it was incumbent upon the appellant to prove, First: That Nicholson was in the employ of appellee, and then to prove that Nicholson had certain duties assigned to him by the appellee and that while discharging one of these duties he injured appellant wrongfully. None of these things were proven and of course the action of the court was perfectly proper in directing the jury to return a verdict for the appellee. 18 R. C. L. 786, and the authorities there found. I especially call the court's attention to the splendidly reasoned case of *McKain* v. *Baltimore, etc., R. R. Co.,* 65 W. Va. 233, 64 S. E. 18, 131 A. S. R. 964; 17 Ann. Cas. 634, 23 L. R. A. (N. S.) 289. This case holds that special police officers are to be deemed *prima-facie* public officers for whose wrongful acts the employer is not liable, even when it is proven that the party sought to be held liable has actually selected and empowered the officer. See, also, *Tucker* v. *State,* 60 So. 65, 103 Miss. 117; *N. O. & N. E. R. R.* v. *Scarlett,* 76 So. 265; *Mooreman* v. *State,* 95 So. 638.

*Jno. L. Buckley,* also for appellee.

It is elementary law that agency cannot be proven by the acts or declarations of the alleged agent. Wharton on Ag., sec. 162; *Kinnare* v. *Gregory,* 55 Miss. 622; *Memphis & Vicksburg R. R. Co.* v. *Cocke,* 64 Miss. 713; *H. & C. Newman* v. *Taylor,* 69 Miss. 670; *Gilchrist* v. *Pearson,* 70 Miss. 351; *Therral* v. *Ellis,* 83 Miss. 498; *Whitting* v. *Lake,* 91 Pa. 349.

The proof does not show that appellee, Stonewall Cotton Mills, instructed, consented to or knew of the difficulty between appellant and Nicholson. Had Nicholson been the agent of the Stonewall Cotton Mills, which we deny, and the proof so bears us out, it could not be mulcted in damages.

The rule in Mississippi is well settled that the master is not liable for the acts of the servant when done outside of the scope of his employment, and not in the furtherance of the master's business, unless such act be directed to be done by the master or ratified by him. *N. O. Jackson & Great Northern R. R. Co.* v. *Harrison,* 48 Miss. 112; *L. & N. R. R. Co.* v. *Douglas,* 69 Miss. 723; *Vicksburg Waterworks Co.* v. *Gorman,* 70 Miss. 360; *Canton Cotton Warehouse Co.* v. *Pool,* 78 Miss. 147; *A. & V. Ry. Co.* v. *Harz,* 88 Miss. 681; *I. C. R. R. Co.* v. *Laftham,* 72 Miss. 757; *Moore Stave Co.* v. *Wells,* 111 Miss. 796; *Woods* v. *Clements,* 113 Miss. 720; *I. C. R. R. Co.* v. *Green,* 130 Miss. 622.

The attorneys for appellant, Walters, are laboring under the mistaken idea that Nicholson is the agent of the appellee, Stonewall Cotton Mills, because of the mere fact that a donation of seventy-five dollars per month was made by appellee towards law enforcement. If this be sound reasoning then hundreds of good citizens of the state of Mississippi, along with the writer of this brief, could be sued for the reason they make donations for the enforcement of the great prohibition cause and other law violations. The only American case I have been able to find in point is *Tolchester Beach Improvement Co.* v. *Steinmeier,* 72 Md. 313. This is a very well reasoned case.

Argued orally by *Earl N. Floyd,* for appellant, and *J. L. Buckley* and *M. W. Reily,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant, E. E. Walters, sued appellee, Stonewall Cotton Mills, a corporation, in the circuit court of Clarke county for damages for an injury received by him at the hands of one Nicholson, alleged to be an employee of appellee, and acting within the scope of his employment when the injury was inflicted. At the conclusion of the evidence for appellant, on motion of appellee the evi-

dence was excluded and a verdict directed for the latter,
from which appellant prosecutes this appeal.

Appellant alleged in his declaration and undertook to
prove that J. P. Nicholson was a servant of appellee, em-
ployed about its cotton mill plant at Stonewall to protect
the plant from depredations of trespassers and to arrest
and prosecute violators of the criminal laws of the state;
that in furtherance of such employment Nicholson as-
saulted, beat, bruised, and wounded appellant most pain-
fully and seriously. Appellee defended on two grounds,
namely: That Nicholson, when he committed the assault
and battery on appellant, was acting as deputy sheriff of
Clarke county and was not the servant of appellee; and
that, if he was the servant of appellee, the latter was not
responsible for the assault and battery committed on ap-
pellant, because in doing so Nicholson was not acting in
furtherance of his employment, but was serving his own
ends.

In passing on the propriety of a directed verdict, every
fact proven, or which the evidence tends to prove either
directly or by reasonable inference, should be treated as
proven as against the party in whose favor the verdict
is rendered. So construing the evidence offered on be-
half of appellant, the following case was made:

Appellee was the owner of a large cotton mill factory
at Stonewall in Clarke county and had been for many
years. Stonewall is a mere village; it is unincorporated.
Appellee's cotton mill plant and the activities connected
therewith was about all there was at Stonewall. Appel-
lee owned, as a part of its plant, the homes in which its
officers and a large number of employees resided. It
owned the larger part at least of all the property in the
little village; the streets and alleys were laid out on ap-
pellee's property. There was a moving picture show
there, which was on appellee's property; there was also
a village prison located on appellee's property, where
persons charged with crime and under arrest were con-
fined while awaiting their trial. It had at one time the

larger part or all of the village fenced, with a gate entering the inclosure. Stonewall, being unincorporated, had no municipal government. The community had to look to the officers of the county, sheriff, constable, and justice of the peace, to preserve order and enforce the criminal laws of the state. It seems from the evidence that the only semblance of local government was furnished through the very laudable efforts of appellee in this manner: Nicholson was paid seventy-five dollars a month by appellee to arrest and prosecute violators of the law in the village. There was a justice of the peace, who was paid a salary by appellee, and there was an old negro who took care of the streets and alleys, who was paid a salary by appellee. Nicholson's family worked in appellee's cotton mill, and he with his family occupied one of the residences owned by appellee.

Appellant in order to make out his case, put Nicholson on the witness stand. He was plainly unfriendly to appellant and friendly to appellee. He testified on direct examination in substance that some time in 1920 Mr. Wainwright general manager of appellee's cotton mill, told him he would have the sheriff of Clarke county to appoint him deputy sheriff for the purpose of arresting and prosecuting violations of the criminal laws of the state, taking place in and around Stonewall; that appellee would make his bond as such deputy sheriff and pay the necessary premium charged by the surety company for making the bond; and in order to supplement any fees he (Nicholson) might make as such deputy sheriff, appellee would pay him seventy-five dollars per month. Nicholson said that he accepted that proposition, and from that time, which was some time in 1920, up to and after appellant's injuries, which were inflicted some time in April, 1922, he had served under that arrangement. He testified that he was employed to make arrests and ''to prosecute anything unlawful,'' and, besides his fees allowed by the court in each case of conviction, appellee paid him the seventy-five dollars so that he could have

sufficient to live on. When Nicholson was turned over to the attorneys for appellee, he very willingly and positively stated that he was employed alone by the sheriff of Clarke county as deputy sheriff; that appellee had nothing to do with his employment, except its manager, Mr. Wainwright, had him appointed deputy sheriff and agreed for appellee to pay him a salary of seventy-five dollars per month and pay the premium on his official bond; that appellee did not control his services, in fact, had nothing to do with his services; that he acted alone for the sheriff of Clarke county; and that he was so acting at the time of the injuries for which appellant sued.

The injury sued for came about in this way, according to appellant's evidence: He with some of his friends went to a picture show in Stonewall. They went at night. They remained only a short time. As they came down the steps from the picture show, they met Nicholson, who ordered them to leave town; they went on to where their horses were hitched. In a very short time Nicholson followed them and came up to where they were standing at the place where their horses were hitched. Nicholson, without any provocation, assaulted and beat appellant most unmercifully. He knocked out some of appellant's teeth with a pistol and with the same instrument beat appellant over the head and face, and kicked him with his foot. Nicholson testified that there was no truth in what appellant and his witnesses said about the altercation; that the truth was that appellant was drinking, and, when he (Nicholson) approached appellant about it, demanding that he leave Stonewall or submit to arrest, appellant made an assault on him with a knife; and, in self-defense, he struck appellant. Appellant, after being wounded by Nicholson, was taken to the village prison located on the property of appellee and owned by appellee, and there kept for some hours.

Appellant showed by the chancery clerk of Clarke county that the records in his office revealed neither an appointment by the sheriff of Nicholson as deputy sheriff

nor oath of office or bond by Nicholson as such deputy sheriff. The only evidence that Nicholson was deputy sheriff was simply his statement that appellee's general manager, Wainwright, had agreed in 1920 to have him appointed deputy sheriff, and that since that time he had been acting as such.

There is diversity of authority as to the liability of natural persons and corporations for the wrongful acts of police officers who have been commissioned by public officials. Some courts have held that, although the defendant procured the appointment of such police officer and paid him for his services in connection with defendant's property, still there can be no recovery; that such officer acts for the state and not for the defendant. However, the weight and better reasoned modern opinion is that, where persons, natural, or artificial, with the consent of the state, employ police officers of the state to represent them in protecting and preserving their property and maintaining order on their premises, and such officers are engaged in the furtherance of their duties, acting within the general scope of their powers, they become and are servants of and employees of such private persons and corporations, and, for any negligent or wanton acts committed by them in the line of their duties to the injury of others, their masters or employers are liable. 18 R. C. L. 786, section 246, and cases in notes.

Our court held in *King* v. *Illinois Central R. Co.,* 69 Miss. 245, 10 So. 42, that the Act of February 22, 1890 (Laws of 1890, p. 106), constituting railroad depot agents in this state conservators of the peace with authority to preserve order in waiting rooms and power to make arrests, did not make them officers of the state, but merely enlarged and defined their duties as agents of the railroad companies; that for the unlawful exercise of this authority the railroad companies were responsible; and that, where a depot agent made an arrest of one not guilty of any offense or otherwise liable to arrest under said statute, the railroad company was liable for false

imprisonment, although the agent had no express instructions from the railroad company to make arrests and supposed he was acting as an officer of the state. The facts of that case, it is true, are different from the facts of this, but it seems the case is in point here in this: The court held in that case that the railroad company could not hide behind the fact that its depot agent was a public officer authorized to make arrests; that in truth and in fact the depot agent in making the arrest was primarily serving the railroad company and, that that was the purpose of the statute.

Appellant's evidence tends to show that, primarily and mainly, appellant was employed and paid by appellee to serve its purposes, which was the general welfare of this little community, so far as the same could be promoted by him. Appellee promised they would have him clothed with the necessary official authority, and Nicholson testified that he acted as deputy sheriff. But conceding that he was a deputy sheriff, appellant's evidence tends to show, as stated, that the main consideration was to serve appellee.

We hold under the evidence in this case that it was a question for the jury as to who was Nicholson's master; as to whom he looked and had a right to look as his employer. If it was a fact that appellee merely paid Nicholson seventy-five dollars a month in order to promote the public welfare by having the law enforced, without any authority or control whatever over his actions in that respect, then clearly appellee would not be liable for his misdeeds. On the other hand if, in acting as deputy sheriff, it was only sought to clothe him with official authority, and that primarily he was employed by appellee to serve it, even though in doing so the public welfare would be promoted, then appellee would be liable for the injury done by him if done in the line of his employment.

Appellee seeks to justify the action of the trial court in directing a verdict in its favor on the ground that, even though it be conceded that Nicholson was the serv-

ant of appellee, still at the time of the injuries complained of he was acting without the scope of his authority, and therefore appellee is not liable.

In order to hold a master liable for the act of his servant it is not necessary to show that the act in question was either expressly or impliedly authorized by the master. If the servant at the time of the wrongful act was engaged for the master in the general scope of his employment, though acting contrary to the express instructions of the master, still the latter is liable. Or putting the same principle another way, if the servant, when he committed the wrongful act, was acting in furtherance of the master's business for which he was employed, the master is liable, although the servant in the doing of the act has, contrary to the instruction of the master, stepped beyond his authority.

Appellant's evidence tends to show that Nicholson was employed by appellee to arrest and prosecute violations of the law, and that, when the injuries complained of were inflicted, he was acting in furtherance of that employment. We hold, therefore, that the evidence was sufficient to go to the jury on the proposition whether Nicholson was acting within the scope of his employment when he inflicted the injuries complained of on appellant. *Waterford Lumber Co.* v. *Jacobs*, 132 Miss. 638, 97 So. 187.

Appellee contends further that appellant was bound by the evidence given by Nicholson, whom appellant put on the witness stand; that appellant will not be heard to question the truth of Nicholson's evidence after making him his witness; that under that principle Nicholson's evidence should be taken most strongly against appellant, and so taken it was plainly shown that Nicholson was not employed by appellee. Nicholson's evidence is somewhat in this attitude: On direct examination by appellant's attorney, his evidence tended to make out a case for appellant; on cross-examination by the attorney for appellee, he denied the existence of every fact which would

make out a case for appellant. This is not a case of the impeachment of a witness by the party offering him; it is a case where the evidence of a witness is susceptible to two interpretations, one favorable to the party offering him, the other unfavorable. Under such circumstances the party offering the witness is not barred from the use of his evidence, even though unfavorable to such party; he has the right to have the evidence go to the jury, who will determine which of the witness' statements is true.

Appellee invokes the principle that neither the agency nor the scope of the agent can be proven by the declarations alone of the agent. Certainly by numerous adjudications of this court that has been determined. But that simply means that the declarations of the agent off of the witness stand cannot be testified to by others in order to show his agency and the scope of it. It does not mean that the agent cannot be put on the witness stand and be permitted to testify as any other witness to his agency as well as the scope of his agency. Therefore the evidence of Nicholson, which established or tended to establish that he was the servant of appellee and in the scope of his employment, was competent.

The evidence, offered by appellant and ruled out by the court, tending to show the extent of the authority exercised by appellee in and about the property and affairs of the village of Stonewall, should have been admitted as bearing on the question of whether Nicholson was the servant of appellee. It was clearly pertinent.

We find no merit in the other questions raised, and we do not deem them of sufficient importance to require discussion.

*Reversed and remanded.*