GULF, MOBILE & NORTHERN R. Co. *v.* WELDY.

(Division A. June 14, 1943.)

[14 So. (2d) 340. No. 35369.]

346

**E. C. Fishel**, of Hattiesburg, **C. C. Smith**, of Richton, and **Welch & Cooper**, of Laurel, for appellant.

Harmon Young, of New Augusta, and Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **N. T. Currie** and **Alexander Currie**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

Upon a former appeal of this case the judgment in favor of the plaintiff in the sum of $10,000, as damages for personal injuries, was reversed because of an erroneous instruction. Gulf, M. & N. R. Co. v. Weldy, 193 Miss. 59, 8 So. (2d) 249. On the next trial, he recovered a verdict and judgment for the sum of $20,000, and the defendant again appeals.

The appellant assigns as the principal grounds of error on this appeal: (1) the refusal of the court to grant a peremptory instruction in its favor, for the reason (a) that the testimony of the plaintiff as to how he sustained his injuries is so unreasonable as to be wholly unbelievable and therefore insufficient to sustain the verdict, and (b) that the plaintiff wholly failed to prove the allegation of his declaration to the effect that the brakeman of the railroad company, who is alleged to have knocked the plaintiff off a freight train and caused his injury, was acting in the scope of his employment or in the line of his appointed duties; (2) that the trial court erred in overruling the defendant's motion for a new trial on the ground that the verdict of the jury was contrary to the overwhelming weight of the evidence; (3) the action of the court in overruling an objection to the statement made by one of the attorneys for the plaintiff in his closing argument to the jury to the effect that "one year ago when this case was tried a jury of twelve good men believed Terry Weldy"; and (5) that the verdict of the jury is greatly excessive.

As to the proposition (a) of the first ground assigned for error, we cannot say, with full assurance, that the proof on behalf of the plaintiff does not meet the requirement or standard set forth in the case of Thomas v. Williamson, 185 Miss. 83, 187 So. 220, 221, wherein it was said: "When all the testimony in behalf of a party litigant is taken as a whole and is considered as if undisputed by the other party, and that testimony is reconcilable in essential features with the material facts which are undisputed, and when so reconciled, and taken together with the undisputed facts, is of such a real and substantial nature that impartial men of sound judgment could reasonably believe it, and prudently act thereon, and thence it furnishes a factual basis adequate to sustain the case of the party, a peremptory instruction should not be granted against him."

As to the proposition (b) of the first ground assigned for error, certain rules of the railroad company were introduced in evidence from a rule-book prescribing the duties of trainmen which fail to show that the brakeman on the train in question had any duty to perform in regard to ejecting a trespasser therefrom; but it appears that during the cross-examination of the conductor on this train, he was asked the question: "Now, Mr. Derrick, you being the conductor, it would be the duty of a brakeman or flagman finding a trespasser on the train to notify you, wouldn't it?" To which question he replied, "Well, yes, sir." Then when the brakeman was interrogated as to what his instructions were as to what to do with third persons riding on the train, he answered: "Let them ride—don't have anything to do with them." Thus we have a conflict in the evidence as to whether or not the brakeman had any duty to perform with reference to a trespasser found on such a train; and this court, in the case of Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743, 745, said: "The act of ejecting a trespasser from an engine, and the act of reporting his presence thereon, may be different in kind; but that fact is not conclusive,

for, when considered in the light of the ultimate object to be accomplished, they will appear to be similar in quality, and the second to be incidental to the first; and an unauthorized act is incidental to an authorized act, though different in kind, if it is subordinate and pertinent thereto, provided it 'be something within the ultimate objective of the principal, and something which it is not unlikely that the servant might do.' A. L. I. Rest., supra, p. 55; Southern Railway Co. v. Hunter, supra [74 Miss. 444, 21 So. 304]; Walters v. Stonewall Cotton Mills, supra [136 Miss. 361, 101 So. 495], and Alden Mills v. Pendergraft, supra [149 Miss. 595, 115 So. 713]."

On the second ground assigned for error, the conclusion is inescapable on the record that the verdict is in fact contrary to the great weight of the evidence on the particular issue as to whether the railroad company was at fault in regard to the injuries complained of, assuming that, as the preponderance of the evidence shows, the plaintiff sustained his injuries by being dragged underneath the freight train. But whether the case should be reversed on this ground, we are not called upon to say in view of other errors hereinafter mentioned.

We shall now consider in connection with the weight of the evidence the third assignment of error hereinbefore stated.

The proof upon the trial after the case was remanded necessarily disclosed that there had been a previous trial, since the testimony of two of the witnesses for the defendant who had died since the first trial was introduced in evidence upon the second trial, and other witnesses were cross-examined on such trial in regard to their testimony on the former trial; but it did not appear from the testimony submitted to the jury whether the first trial had resulted in a verdict for the plaintiff or had been concluded by a peremptory instruction in favor of the defendant before the former appeal to this court.

At the time the jury was told that "one year ago when this case was tried a jury of twelve good men believed

Terry Weldy,'' the jurors were confronted with the fact
that he had testified that he had not been drinking on the
night in question shortly before he claims to have caught
the freight train at Beaumont, about an hour before he
sustained his injuries during the switching operations at
Richton, whereas it was shown by the testimony of sev-
eral apparently disinterested witnesses that he was seen
at several different places at Beaumont in an intoxicated
condition shortly prior to boarding the train; that he
claimed to have been riding on a gondola car at the time
the brakeman entered such car at the north end to ap-
proach and assault him at the south end thereof, whereas
it was shown by the record of the defendant company
that there was no such car in the train on the occasion
complained of; that according to the testimony on behalf
of the plaintiff, he had sustained a lick on his head such
as to make a knot about the size of an egg, in addition to
his broken arm, collar-bone, shoulder-blade, and other
injuries, and he had testified that the brakeman ''knocked
me off or shoved me off, or something'' when first placed
on the witness-stand, while also testifying that brakeman
struck him on his head with his fist in knocking him off
the moving train between two cars thereof, and that he
did not feel his head hit anything while falling underneath
the train; that on the next morning he told his father,
when asked by him as to how he got hurt, that ''a train
done it'' without implicating any member of the train
crew one way or the other as to any responsibility or fault
in connection therewith; that he had stated to numerous
witnesses shortly after he had sustained his injuries that
he did not know how he got hurt; that although he did
not deny making these statements to numerous persons
to the effect that he did not know how he had got hurt,
he claimed that if he had done so, he was then uncon-
scious, whereas he had done certain things and made
other statements inconsistent with the idea that he was
unconscious at the time he disaffirmed any knowledge of
how he had got hurt; that according to the testimony of

a United States' postoffice inspector, he made similar statements in the hospital several days later as to his lack of knowledge as to how he sustained his injuries, and at a time when the jury was warranted in believing that he was not unconscious. Also, the jury was confronted with the fact that the alleged act of the brakeman in knocking the plaintiff between two cars of a moving train under the circumstances testified about would have evinced such a reckless disregard of human life as to amount to the commission of a serious crime against the plaintiff by a person who was not shown to have borne any ill will toward him prior to the occasion complained of, and at a time when the plaintiff says he was obeying the order of the brakeman to get off the train, and was complying with such demand without hesitation, resistance, or delay—an act not in accord with the conduct of a normal human being and at variance with the common experience of men.

In this situation and state of the testimony, it was the right and province of the jury to decide the issues submitted to it for determination from the evidence alone introduced on the trial at that time, uninfluenced by the decision of a former jury based on either the same or different testimony; and while it was permissible in argument to answer the attack made by the defendant upon the reasonableness of the plaintiff's story, such argument is to be based only upon the testimony, facts, and circumstances disclosed by the record of the particular case in support of the plaintiff's version of what occurred to sustain his theory of liability of the defendant.

In 64 C. J., pp. 258, 259, it is said, among other things, that ''Matters shown by the files, not pertaining to the trial at bar, and not brought before the jury in connection with it, cannot be made use of in argument; . . . . Moreover, it is generally held to be improper for counsel to inform the jury as to the result of a former trial in either his opening statement or his argument, or on an appeal from a judgment of a justice's court to acquaint

the jury with the result of the trial below, . . . ." To the same effect are the cases of Dupuy v. Wright, 7 Ala. App. 238, 60 So. 997; Bishop v. Brittain Investment Co., 229 Mo. 699, 129 S. W. 668, Ann. Cas. 1912A, 868; Attaway v. Mattax, 4 Willson, Civ. Cas. Ct. App. 21, 14 S. W. 1017; Bolan v. Williams, 14 Neb. 386, 15 N. W. 716; Louisville & N. R. Co. v. Payne, 138 Ky. 274, 127 S. W. 993, Ann. Cas. 1912A, 1291; Corning v. Woodin, 46 Mich. 44, 8 N. W. 572; Millspaugh v. Schultz, 180 Mich. 310, 146 N. W. 634; Chicago Traction Co. v. Lawrence, 211 Ill. 373, 71 N. E. 1024; Illinois Cent. R. Co. v. Jolly, 119 Ky. 452, 84 S. W. 330; Willyard v. State, 72 Ark. 138, 78 S. W. 765; Ball v. Keokuk, etc., R. Co., 74 Iowa, 132, 37 N. W. 110; Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633. Moreover, no decisions holding that the finding of a jury on a former trial may be commented on have been called to our attention. If the result of a former trial is to influence or control the action of the jury on a new trial, then its purpose would be defeated. The effect of the argument complained of, whether so intended or not, would be to admonish the jury that the testimony which the plaintiff was asking it to accept as true, may not after all be so incredible as it may at first seem, or as contended for by the defendant, since one jury of twelve good men had already believed it and acted upon it—a fact that may cast such weight into the scales as would cause some jurors to agree to a verdict in a case where they would not otherwise do so; and especially so where there is a close question as to whether impartial men of sound judgment could reasonably believe the testimony on which the verdict is sought, and prudently act thereon.

The consideration last above mentioned was given effect by this court in the case of Berry v. State (Miss.), 22 So. 826, 827, wherein it was held to be reversible error for the district attorney to refer to a previous trial of a different defendant, on which one of the jurors in the instant case had also served, and to say that in the former case the defendant had been convicted, although "he put

up a far better defense than this defendant has, and twelve good men thought he was guilty,'' etc. The court held there that the error consisted in the injurious effect of the remarks, and that the fact that the district attorney did not know that one of the jurors had served on the former trial was not the point. In the case at bar, when we consider the principle announced in the Berry case, supra, to the effect that reversible error consists, if at all, in the injurious effects of the remark complained of, we are unable to say that it would not be equally prejudicial, if not more so, to comment on the decision of the jury on a former trial where the same litigant was involved and where the verdict in his favor is supported by substantially the same testimony as to the main point at issue as that offered by such litigant on the trial then in progress. In that case, the court pointed out that while the assignment predicated of the remarks of the district attorney was error, ''we would hold it not reversible error, if the conviction could be sure to be clearly right,'' and then commented on the unsatisfactory nature of the testimony on which the conviction rested, as a reason for reversal.

But it is urged that the bill of exceptions taken to the argument complained of is insufficient in that the defendant did not state the basis of the objection to the argument, nor ask the court to instruct the jury to disregard it. However, where the reason for the objection is obvious, it is not required that the trial court should be informed of the ground of such objection by an express statement of the same; and where the objection has been overruled, it is not required that the objector should ask the court to exclude from the consideration of the jury that which the court has already held to be competent. Of course, if the objection had been sustained, the objector should move the court to instruct the jury to disregard the matter objected to before he would be in a position to complain that his rights have been prejudiced

from the mere fact that such matter had been brought to the attention of the jury.

In view of the fact that the case is to be again remanded for another trial, attention should be called to the fact that it was error to submit to the jury the question of whether the brakeman was acting within the "apparent" scope of his authority in the alleged ejection of the plaintiff from the train, since this is a tort action in which the servant must act within the scope of his employment and in the exercise of his actual authority, either express or implied, in order to render the master liable for his acts.

Also, the jury should not have been instructed that it was immaterial as to what kind of car the plaintiff may have been ejected from, if any, since the fact of whether there was a gondola car in the train affected the credibility of the plaintiff both on that issue and as to the detailed circumstances under which the alleged assault was committed, since the jury may have believed that he could not have been knocked off the top of a box car of a moving train under the circumstances testified to without being killed, and this instruction deprived the defendant of the benefit of its proof that there was no gondola car in the train in contradiction of the testimony of the plaintiff. It was the province of the jury to determine whether the nature and type of car on which the plaintiff was riding was material in considering whether his injuries could have been sustained in the manner claimed, and as affecting the reasonableness and credibility of his testimony as a whole.

It is unnecessary that we consider the question of the excessiveness of the verdict or any of the other alleged errors assigned in view of the conclusions hereinbefore stated.

Reversed and remanded.