[Civ. No. 7387. First Appellate District, Division One.—April 27, 1931.]

SARA M. McKINNEY, Respondent, v. RED TOP CAB CO. (a Corporation) et al., Appellants.

Theodore Hale, Barry J. Colding, Carrol B. Crawford and B. P. Gibbs for Appellants.

Howard Harron for Respondent.

THE COURT.—About 5 o'clock on the afternoon of June 27, 1928, plaintiff and her eleven year old daughter were being conveyed from plaintiff's home on Sanchez Street, San Francisco, to the Southern Pacific station at Third and Townsend Streets, in a taxicab owned by the defendant corporation and driven by the defendant Maloney, intending to entrain for Los Angeles at 6:15 P. M. At the intersection of Fourteenth and Howard Streets a collision occurred between the taxicab and another automobile. The taxicab was overturned, but was immediately righted by the driver and bystanders; and as a result of the collision and in righting the taxicab plaintiff was injured. She was removed at once to the Central Emergency Hospital and

there given first aid, whereupon she summoned another taxicab and contrary to the advice of the surgeon at the hospital, was driven to the station and boarded the night train for Los Angeles. Her brother met her at the station in Los Angeles the following morning and she was placed under the care of Dr. Earl Eames. She remained in Los Angeles under the care of Dr. Eames for eight days and then, on July 6, 1928, returned to San Francisco, where she received certain medical and electronic treatments. In May, 1929, she instituted this action for damages, and upon trial a jury awarded her a verdict for $9,150, and from the judgment entered thereon defendants prosecute this appeal.

Defendants concede that the evidence relating to the circumstances under which the collision occurred is sufficiently conflicting to preclude them from claiming on appeal that the driver of the taxicab was free from negligence proximately causing the accident, but as grounds for reversal it is urged, first, that they were prevented from having a fair trial because, as they assert, plaintiff's counsel, during his closing argument to the jury, was guilty of prejudicial misconduct in stating to the jury that the corporation defendant was insured; secondly, that plaintiff failed to take proper care of herself or to obtain proper and necessary medical and surgical treatment, which it is claimed contributed to the extent of her injuries, and that therefore she was guilty of contributory negligence; and third, that the amount of the verdict was excessive.

Taking up the points in the reverse order in which they are made, the record discloses the following facts: At the time of the accident plaintiff was forty-four years of age and by occupation was a solicitor and saleswoman for a distributing dairy. As a result of the accident she sustained a number of cuts, lacerations and contusions about the face, neck, one of her arms, and knees, and although no bones were broken she complained of injuries to her spine and right ankle. At the emergency hospital, her wounds were cleansed, and while en route to Los Angeles the maid employed on the train brought her a hot compress and watched over her generally; and at Watsonville Junction a local physician met the train, in response to a telegram, but stated that there was nothing to be done for her, that all she needed was an opiate to insure sleep and rest. The

treatment administered by Dr. Eames in Los Angeles consisted of caring for her wounds and bruises generally, and upon returning to San Francisco she consulted a Dr. McKinney, who treated her once at his office by "draining" the wounds on her face. Thereafter she took up electronic treatments under a Dr. Colson, and continued the same twice a week for about four months. Neither Dr. McKinney nor Dr. Colson were called as witnesses; but plaintiff testified that she was still suffering from nervousness and pain; that she could not lie down with comfort; that she suffered constant pain from the injuries to her knees and to her spine from the shoulders to the hips; and that she was unable to work at her former employment or to perform the usual household duties. Her statements as to her permanent disabilities were more or less corroborated by the testimony of Dr. Eames. In this regard he testified that when she left Los Angeles on July 6, 1928, he was unable to say definitely to what extent her injuries would prove permanent, but that he had examined plaintiff about ten days before trial, and that in his opinion she had sustained sixty per cent permanent disability as a result of the injuries to her spine, knees and nerves; that there was partial limitation of motion of the knees, and that she had difficulty in walking and stooping, and that there were tender areas over the spine, extending from the dorsal to the lumbar regions. Furthermore, there was some testimony showing that her face was somewhat scarred.

Defendants concede that if plaintiff is permanently injured as claimed, such injuries are legally sufficient to support a verdict for the amount awarded, but they argue that the only evidence thereof consists of the testimony given by plaintiff herself and that of Dr. Eames, who, it appears, is married to plaintiff's niece. The credibility of the witnesses, however, is a matter for the jury to decide, and while, as defendants contend, there may be circumstances tending to throw suspicion on some of plaintiff's statements and conduct, the jury evidently accepted as true her testimony and that given by Dr. Eames, and acted upon the same in awarding plaintiff a verdict for the amount stated. Consequently it is beyond the power of this court on appeal to interfere with the jury's conclusion. In addition to the permanent injuries suffered, the evidence shows

that plaintiff incurred considerable expense for medical and electronic treatments; that she was compelled to hire a practical nurse for four months at $50 a month; and that prior to the accident she was earning an average of $45 a week. In the state of the record above described it cannot be held as a matter of law that the verdict was so excessive as to appear that it was given under the influence of passion, prejudice or corruption. ■ It may be true, also, that there are certain circumstances tending to show that plaintiff acted imprudently in traveling and in caring for herself immediately following the accident; also in failing to obtain proper medical treatment after her return to San Francisco; but defendants introduced no affirmative proof whatever, medical or otherwise, to show that plaintiff's injuries were aggravated thereby, or that the permanency thereof was brought about by imprudence or neglect. Consequently, there is no evidence to establish, contrary to the implied finding of the jury, that she was guilty of contributory negligence.

With reference to the charge of misconduct, the record shows that during the closing argument counsel for plaintiff said in part in criticism of the argument made by counsel for defendants: " . . . And why does he (counsel for defendants) attempt to deceive you?—Because he is praying for a verdict but for the minimum amount that you will give. He has abandoned all hope. He did put a plea in that if four of you will stick together against the claim of this plaintiff you may be able—you can defeat the plaintiff, but be as reasonable as you can, this poor insurance company that took your money. Mr. Hale (counsel for defendants): I ask that that be stricken out, your Honor. I said nothing about any insurance company in this case. Mr. Harron (counsel for plaintiff): You did talk of insurance company." After briefly commenting upon the matter, the court asked Mr. Harron if the court understood him correctly, that is, whether or not he made the statement that "should a verdict be rendered it will be paid by the insurance company". Mr. Harron replied: "I don't think that was quite my words, but I might call your Honor's attention to the fact that Mrs. McKinney, under examination by Mr. Hale, testified that Mr. Tracy, the representative of the insurance company, told her he came there for

the purpose of getting a statement to send to Mr. Gibbs, chief counsel of the insurance company in Los Angeles, in reference to a settlement.'' The following proceedings then took place: "The Court: If there is any reference made further to the fact that an insurance company would pay the verdict that may be rendered in this case I will discharge this jury. Now you know very well you are not permitted to do that. . . . Mr. Harron: . . . He made some argument of partial insurance of autos. I don't know whether your Honor will permit me to talk on it or not. The Court: You can refer to any argument that is made, but I tell you once more you know as well as I do the Supreme Court has held any time the jury gets an impression an insurance company is going to pay a verdict the jurors will raise the amount of the verdict; for that reason the Court should be very, very careful and not permit a discussion of that kind. And if there is a further reference to it here this jury will walk right out. Mr. Harron: Then I won't dare risk my position by answering his statement. . . . '' There was some further brief discussion, but it was unimportant, and therefore need not be noticed here.

It is doubtless the law, as defendants contend, that an unwarranted intrusion before a jury in a personal injury action of the fact that the defendant is insured is highly prejudicial to the defendant's rights, and that an order to strike out the objectionable matter and instructions by the court to the jury to disregard the matter so stricken ordinarily will not save the error. (*Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563 [74 Pac. 147]; *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700]; *Citti* v. *Bava*, 204 Cal. 136 [266 Pac. 954].) However, as indicated by counsel for plaintiff in his remarks to the court, the information that defendant corporation was insured had been already imparted to the jury during the taking of the evidence as a result of the cross-examination of plaintiff by counsel for defendants. In this regard the record shows that counsel for defendants, apparently for the purpose of laying the foundation for impeachment evidence, interrogated plaintiff on cross-examination to a considerable extent about a visit to her home on September 17, 1928, of two men named Tracy and Brown, and as to certain statements she was charged with having made to them, and

finally plaintiff admitted that she remembered the occasion referred to, saying in part: "A Mr. Tracy called, a man representing himself as Mr. Tracy, from the California Highway Indemnity Company, who supposedly are carrying the insurance on the Red Top Cab; he called at my residence; he had a man with him and pretended to me he had been shot through the finger and wanted a statement from me, . . . and I don't remember just what I said, and the only thing I did answer Mr. Tracy definitely is when he asked me 'What do you expect us to do for you, Mrs. McKinney', and I told him to compensate for my injuries, my time off from work and my expenses; that is the only thing I considered of any importance in answer to Mr. Tracy." Counsel for defendants then interrogated plaintiff further and in detail as to the rest of the conversation which he claimed took place at that time—what they said to her, and what she said to them. Surely, counsel for plaintiff was thereby given the right on redirect examination to elicit everything else that was said during that conversation, which he proceeded to do, the examination being in part as follows: "Mr. Harron: . . . when Mr. Grover Tracy came to you, what did he say? Mr. Hale: Objected to on the ground that it is incompetent, irrelevant and immaterial, not binding on this defendant. The Court: Overruled. A. He said he came from the California Highway Indemnity Company, who was carrying the insurance on the Red Top Cab in which I was injured. Mr. Harron: Q. Did he say anything more? A. He said he had shot himself in the finger and could not take a statement down and he had to have a little help in order to get the statement. Of course, I understood it all, and it was all right, I knew he brought him as a witness, that was all right, I had nothing to conceal, and he wanted a statement to send to the Los Angeles office, to the Main Office, to Mr. Gibbs, their chief counsel, for the California Highway Indemnity Exchange. Q. Wasn't it for B. P. Gibbs, the chief counsel? A. He did not say the initials; he just said Mr. Gibbs, the chief counsel for the California Highway Indemnity Exchange in Los Angeles, and he had to send the statement down there."

The rule is firmly established by numerous decisions that parties must abide by the consequences of their

own acts and cannot seek a reversal of a case for error which they invited. In other words, one who by his own conduct invites error is estopped afterward from complaining of the prejudicial effect flowing therefrom (2 Cal. Jur. 846, 848; *Seale* v. *Carr*, 155 Cal. 577 [102 Pac. 262]). In the present situation, therefore, since through the action of defendant's counsel in cross-examining plaintiff as to the conversation with Tracy and Brown the jury were informed in substance that the defendant corporation was insured, defendants were not in a position afterward to complain of a statement to the same effect made by counsel for plaintiff in his closing argument, if, indeed, the statement complained of is susceptible of importing such meaning. ▮ In any event, the question of whether or not asserted misconduct of counsel during argument operates prejudicially upon the deliberations of the jury is one which, to a great extent, must be left to the determination of the trial court in ruling upon the motion for a new trial; and its conclusion will not be disturbed unless it is clearly shown to be erroneous. (*Girard* v. *Irvine*, 97 Cal. App. 377 [275 Pac. 840].) As will be seen from the portions of the record above quoted, the trial court in the present action was alert to prevent any transgression of the rules of legitimate argument, and having personally witnessed all of the circumstances attending the incident was in a position to say, at the time this point was stressed by defendants on motion for a new trial, whether the deliberations of the jury were unduly influenced by the remark complained of, and having decided that they were not, there is nothing in the record to justify this court in holding to the contrary.

The judgment is affirmed.