TALIAFERRO v. REIRDON et al.

*99 P. 2d 500.*

No. 29023.   Jan. 16, 1940.

Rehearing Denied Feb. 27, 1940.

Geo. E. Rider, of Madill, and Busby, Harrell & Trice, of Ada, for plaintiffs in error.

Don Welch, of Madill, for defendants in error.

HURST, J. G. W. Taliaferro and B. N. Taliaferro, administrators of the estate of Byrd M. Taliaferro, deceased, appealed to the district court of Marshall county from an order of the county court of that county settling their final account, discharging them as administrators and distributing the estate to the heirs. From the judgment of the district court affirming the action of the county court, they prosecute this appeal. They assert that the judgment of the trial court was erroneous in three particulars, and we will dispose of their contentions in the order in which they are made.

1. The first contention is that the final accounting was premature, in that a final account could not be properly made in this case until the estate of D. B. Taliaferro had been settled. The facts upon which this contention is made are as follows: D. B. Taliaferro and Byrd M. Taliaferro were husband and wife, and were the parents of four children, two sons, the administrators in this case, and two daughters, Lorene Reirdon and Mary Byrd French. D. B. Taliaferro died November 2, 1927, leaving a will under which his wife and four children were the sole devisees. He left a large estate, and by the terms of his will devised to his widow the rentals from certain business property in Madill, Okla., where he resided at the time of his death. Byrd M. Taliaferro, the widow, was adjudged incompetent shortly after her husband's death, and died intestate August 11, 1935, leaving as her sole heirs the four children above named. She left certain property owned by her individually, and cash in the amount of $9,847.88, which appears to have been derived partly from the rentals which she received from her husband's estate. The administrators were appointed February 21, 1936, and on August 20, 1937, filed a report covering the period from August 11, 1935, to August 11, 1937. This report showed that notice to creditors had been given and time for filing claims had expired, but no claims against the estate had been filed, and that there was on hand a cash balance of $4,982.43. Upon the filing of this account, which did not purport to be final, the two daughters of the deceased petitioned the county court to require the filing of a final account. Over the protest of the administrators the county court required them to file their final account, which was done.

The administrators contend that the will of D. B. Taliaferro does not specify whether the rentals devised to the widow were the gross or net rentals from the Madill property, and that until that was determined the amount they should receive was uncertain and could not be

reported, and that, therefore, it was impossible to determine the amount of the state and federal taxes against the estate, or whether one estate is indebted to the other. This argument, when applied to the facts, is not convincing. The value of the estate of Byrd M. Taliaferro is shown to be less than $20,000, and no claim for taxes, either state or federal, is shown to be pending. It seems to be conceded that the mother's estate is actually, by reason of advancements, indebted to the father's estate. The administrators' contention that Byrd M. Taliaferro was entitled only to the net rentals is agreed to by the contesting heirs, and no protest is made by them against an accounting on that basis. As the daughters suggest, if either estate has any claim against the other, the result is the same whether such claim be paid or not, as both estates are inherited by the same persons in the same proportion. There is no showing that creditors of the D. B. Taliaferro estate, if any there be, will be adversely affected by the distribution of his widow's property. The administrators' complaint that the accounts of both estates should have been, and in effect were, consolidated in the county court, and for that reason they could not properly account separately, is devoid of substantial merit. The accounts were intermingled to a certain extent by the administrators, who were also executors of the will of D. B. Taliaferro, but not consolidated by the county court, and no formal request for consolidation was ever made. The administrators voluntarily filed their report, which was substantially their final account, and while it showed that in some instances the estates had borrowed from each other, and in others money of one had been placed to the credit of the other, there was no controversy over such items, and they have failed to show wherein any additional hardship or liability has been suffered or incurred by them by reason of the account being final.

Both the county and district courts decided that the accounting was not premature, and we think their judgment was correct.

2. The administrators make a further contention that the trial court erred in not allowing a claim of G. W. Taliaferro for money advanced his mother in the sum of $800. No written claim or application for payment thereof had been filed, but the contesting heirs did not deny that G. W. Taliaferro was entitled to payment. They contended, however, that the claim should be made in writing, and should be filed against the estate of D. B. Taliaferro, which was still pending in the county court, stating that they would not resist it if so filed. The trial court stated that, as no claim had been filed in the Byrd M. Taliaferro estate, and no reference to the matter appeared in the final account, the claim should be made in the D. B. Taliaferro case, and that he would take it upon himself to see that it was paid. Thereupon counsel for the administrators made the following statement: "That is satisfactory, if the court please, all we want is our money and the interest at 6 per cent." Then followed some argument in reference to the interest, and the court stated that he would leave that to the county court. Counsel for the administrators then said: "I am willing to leave that to him."

We are of the opinion that counsel by his statements in effect stipulated and agreed to file the claim in the county court against the estate of D. B. Taliaferro, and acquiesced in the ruling of the district court on this claim. Furthermore, it appears that the claim has since been allowed against the father's estate. He is therefore precluded from asserting in this court that the trial court erred in that part of his judgment. 2 R. C. L. 238; Doggett v. Doggett (1922) 85 Okla. 90, 203 P. 223; Dills v. Calloway (1935) 175 Okla. 395, 52 P. 2d 707.

3. The last contention of the administrators is that the trial court erred in holding that a bank deposit of $1,223.80, carried in the name of Mary Byrd Taliaferro, was not the money of the estate, but belonged to her individually. This account originated at some time prior to January 11, 1924, in a Texas bank. By whom it was opened is not shown. Mary

Byrd Taliaferro, now Mary Byrd French, was then about eight years of age, the youngest child in the family. For about two years her mother checked on the account at will, signing the name of Mary Byrd Taliaferro to the checks under some arrangement with the bank which is not disclosed by the record. The account fluctuated in amount, and many deposits were made therein which could not be traced to Byrd M. Taliaferro, although some of the deposits were her money. The last check written in this account by Byrd M. Taliaferro was dated January 1, 1926, and the last deposit therein was made April 16, 1931. On June 7, 1928, a few days before the mother was declared incompetent, B. N. Taliaferro, the brother of Mary Byrd French, put the money, amounting then to $750, in a savings account in her name, where it remained until October 27, 1936, when Mary Byrd French withdrew it. Mary Byrd French testified that she always understood there was an account in her name in such bank, but had no definite information about it until shortly before she withdrew it, when the wife of B. N. Taliaferro told her she had $1,000 in that bank, and that B. N. Taliaferro confirmed such statement, but objected to her drawing it out. He did not deny her right to the money, but told her he would prevent her getting it unless she withdrew her claim, evidently referring to her claim that the brothers were mismanaging her father's estate. Her sister testified that on one occasion she heard her father, who was a director in the bank in which the account was carried, say to her mother that he was putting his director's fees in Mary Byrd's account. No suggestion appears to have been made that the money belonged to the estate until the hearing on the final report.

The account being in the name of Mary Byrd Taliaferro, she was prima facie the owner thereof. 3 R. C. L. 529; Hastings v. Hugo Nat. Bank (1921) 81 Okla. 189, 197 P. 457. And the burden was on the administrators to prove that this money was the property of the estate, or that it was an advancement by the mother to the daughter. This they failed to do.

While the evidence showed that some of the deposits came from the mother, it also showed that she checked out of the account approximately the same amount that she put in it, and the intermingling of money from several sources in the account made it impossible for the trial court to determine what proportion of the account came from either the father or mother. There being no sufficient evidence produced to rebut the presumption of ownership by the daughter, the trial court correctly held it to be neither a gift nor an advancement from the mother to the daughter, and correctly decreed the daughter to be the owner. We do not consider the cases cited by the administrators dealing with the law of gift inter vivos applicable to the facts established.

Affirmed.

BAYLESS, C. J., and RILEY, GIBSON, and DANNER, JJ., concur.