### SANDEFUR v. SANDEFUR.
### No. 6049.

Court of Civil Appeals of Texas. Amarillo.
June 19, 1950.

Rehearing Denied July 10, 1950.

. Simpson, Clayton & Fullingim, Amarillo, Aaron Sturgeon, Pampa (Selden Simpson, Amarillo, of counsel), for appellant.

Saunders & Gano, Dallas, J. B. Maguire, Jr., Pampa, for appellee.

STOKES, Justice.

On a former opinion day we handed down an opinion in this case in which we affirmed the judgment of the trial court. Appellant duly filed a motion for rehearing and, upon a consideration of the allegations and authorities cited in it, we have concluded that we erred in affirming the judgment and that, instead, it should be reversed and judgment here rendered in favor of the appellant. The original opinion is, therefore, withdrawn and the following opinion substituted for it.

This is a common-law action for damages for personal injuries. It was instituted by the appellee, M. L. Sandefur, against the appellant, Stanley Sandefur, who is appellee's brother. According to the record, on July 19, 1947, appellant and appellee each owned a motor truck which was equipped for hauling wheat. Appellee operated his truck and appellant employed Manford Sandefur, a son of appellee, to drive and operate appellant's truck. They were hauling wheat from the farm of one Allen to an elevator located at Hoover in Gray County, a distance of about 12 miles. Their trucks were loaded at the farm in the early evening and they arrived at the elevator around 11 o'clock. Appellee placed his truck at the rear of the line of trucks waiting to be unloaded and, shortly after he had done so, Manford Sandefur arrived with appellant's truck and brought it to a stop a short distance behind appellee's truck. It was ascertained by them that they would no be able to unload their

trucks until the next morning and, as was customary among wheat haulers, Manford proceeded to jack-up the rear end of appellant's truck in order to relieve the springs and tires of the extra and continued pressure placed upon them by the heavy load of wheat. The process involved placing a timber upon the ground under the rear end of the truck, placing two jacks upon it and then placing another timber above the jacks and under the rear end so that, when the jacks were properly manipulated, they would lift the load of wheat and permit up-right timbers to be placed between the upper and lower timbers and thus relieve the springs and tires of the extra pressure through the remainder of the night and until an opportunity was afforded to proceed into the elevator. The record shows that Manford was having difficulty in managing the timbers and the jacks at the same time and he requested his father, the appellee, to assist him. Appellee proceeded to the rear of the truck and was holding one of the upright timbers preparatory to placing it directly under the upper timber when the upper timber and truck were lifted high enough for him to do so. Immediately, without warning and in a manner not thoroughly understood by either of them, the truck suddenly was raised a sufficient height for the upright timber to pass under it. Just at that time appellee was holding the upright block with his left hand on its top and his right hand on its side and was pushing it slightly in order to force it under the upper timber when clearance would permit. When the truck was suddenly lifted the upper end of the upright timber, with appellee's hand on top of it, suddenly went under the upper timber and immediately the truck rolled forward off of the timbers and caught appellee's left hand between the end of the upright block and the upper timber which resulted in serious and permanent injury to his hand.

No issue is presented concerning the pleadings. Suffice it to say that they were sufficient in all respects to present the issues submitted by the court to the jury. In answer to the special issues the jury found, in effect, that Manford failed properly to set the brakes on the truck before attempting to jack it up, but that his failure to do so was not negligence nor a proximate cause of appellee's injury. It found further, however, that he failed to scotch the wheels of the truck so, as to prevent it from rolling either backward or forward. The term "scotch" means placing blocks or other objects in front of and behind the wheels in such manner as to prevent movement of the truck. The jury found that his failure to scotch the wheels so as to prevent the truck from rolling backward or forward was negligence and a proximate cause of the injury to the appellee. It further found that Manford failed to warn appellee that the wheels had not been so scotched and that such failure was negligence and a proximate cause of the appellee's injury. By Special Issue No. 10 the jury was asked to find whether or not Manford had authority from appellant to enlist the assistance of appellee in jacking up his truck and the jury answered: "He did have authority." The jury assessed appellee's damages at the sum of $7,500, and judgment was entered by the court in favor of the appellee in accordance with the verdict.

Appellant's motion for a new trial being overruled, he duly excepted and has perfected his appeal, presenting the case in this court for review upon a number of asserted points of error which we do not deem it necessary to discuss in detail. His first contention is that the court erred in overruling his motion for an instructed verdict and his specially requested issue No. 1 by which the jury would have been instructed to return a verdict in his favor, and in overruling his motion for judgment non obstante veredicto. These contentions are based upon his assertion that the uncontradicted evidence showed that appellee was a mere volunteer in assisting appellant's truck driver, Manford Sandefur, to jack up his truck; that in doing so, he was not furthering or expediting his own business or interests; and that, at most, he was a fellow-servant of appellant's truck driver and, his injury having resulted from the acts of his fellow-servant, he was not entitled to recover and the court should have

granted his motion for an instructed verdict.

All of the testimony was to the effect that it was necessary to relieve the pressure upon the springs and tires under circumstances such as existed here; that this was accomplished in the manner in which Manford Sandefur undertook to accomplish it; that it was a difficult task to accomplish and it frequently became necessary for a driver to enlist the assistance of others in order to do it in a proper manner. Moreover, the undisputed testimony was to the effect that it was customary among truck drivers to enlist the assistance of each other upon such occasions and appellant himself so testified. When he instructed his driver to jack-up the truck, if the occasion arose, he authorized the driver, not only to protect the springs and tires by relieving them of the extra pressure, but to do all things that might be reasonably necessary to accomplish that result. Another rule, well established, is that an emergency or pressing necessity which makes impossible, without assistance, fully to perform a servant's work may, of itself, authorize the servant to enlist the assistance of others whether or not he is specifically clothed with authority to do so. In our opinion the evidence warrants the conclusion that such an emergency existed at the time Manford requested appellee to assist him in jacking-up the truck. He therefore had implied authority from his employer, the appellant, to enlist the assistance of the appellee in jacking-up the truck.

We have no statute in this state which abolishes or in any manner affects the common-law rule relating to liability of the master for injuries inflicted upon a servant by the negligence of a fellow-servant. The rule at common law is that, in the absence of a statute to the contrary, or of express contract, the master is not liable to one servant for injuries due to the negligence of another servant where both the servant who receives the injury and the servant whose wrongful act or neglect caused it are engaged in the same common employment or enterprise. There are a number of exceptions to the general rule but none of them applies in this case. The further rule is well recognized that, where one who has no interest in the accomplishment of the purpose of work being done by an employee of another, volunteers to assist in the work, whether at the request of the servant or not, and, while thus engaged, he is injured, the one so assisting the regular servant stands in the same position as a regular employee engaged in the particular service in so far as any right to recover of the master damages for injuries is concerned. A different rule applies when the injured party is acting at the time in the furtherance of his own or his master's business, but it is conclusive from the testimony that appellee was not, at the time, acting in furtherance of his own business or interest. The basis of the rule which exempts the master from liability to such a volunteer is that it would not be in consonance with legal principles to allow one so assisting to impose a greater liability upon the master than that which could be imposed upon him by his hired servant. Eason v. Sabine & E. T. Ry. Co., 65 Tex. 577; 57 Am.Rep. 606; Mayton v. Texas & P. R. Co., 63 Tex. 77, 51 Am.Rep. 637; San Antonio & A. P. Ry. Co. v. Taylor, Tex.Civ.App., 35 S.W. 855; Walker v. El Paso Electric Ry. Co., 103 Tex. 259, 126 S.W. 262; Dillingham v. Cavett, Tex.Civ. App., 91 S.W.2d 868.

In the Eason case, supra, Eason was an employee of a lumber mill which was manufacturing and shipping lumber on the railroad. The train crew had set a box car at an inconvenient place and Eason requested the conductor to move it to a place where the lumber could be more easily loaded upon it. The conductor consented and it became necessary to couple the car to other cars. No other railroad employee being available, the conductor requested Eason to make the coupling, which he attempted to do, and he was injured. The Supreme Court held that Eason was furthering the interest of his own employer, the sawmill, and therefore was entitled to recover damages but, in passing upon the case, the court announced the rule that, where the injured party is a mere volunteer and has no interest in the work being

performed, he stands in the same position as a regular employee engaged in the particular service in so far as any right to recover for his injuries is concerned.

In the Mayton case, Mayton was requested by the railway company's servants to assist them in setting the brakes on the train. While attempting to do so, in response to the request, Mayton was injured. The Supreme Court held that it could find nothing which showed that Mayton was other than a mere volunteer. Quoting Wood on Master and Servant, the court said: "Such a person cannot stand in a better position than those with whom he associates himself in respect to the master's liability."

In the Dillingham case, the facts were that Cavett was a country boy and had gone to Coleman with his father on a Sunday afternoon to procure some ice. Dillingham, who resided at Abilene, owned the ice plant. It became necessary to cut large blocks of ice into smaller blocks and Dillingham's employee requested the Cavett boy to assist him in operating the perpendicular saws in order to cut the ice into proper sized blocks. Young Cavett did so and, while thus engaged, his foot became entangled with the saws and he was injured. He brought suit for damages against Dillingham in the District Court of Coleman County and Dillingham filed a plea of privilege to be sued in Taylor County, the county of his residence. In passing upon the question of whether or not the plaintiff had made out a case, this court quoted from 39 C.J. p. 554, to the effect that an emergency which makes impossible, without assistance, the full performance of a servant's work may, of itself, arm the servant with power to employ or accept assistance and thereby clothe the one employed or assisting with the rights of a servant of the master. See also 56 C.J.S., Master and Servant, § 328. It was further said that a person so employed or assisting is called an "emergency servant" and that the liability of the master for an injury to him is governed by the ordinary rules as to the liability of the master for an injury to his servant. While that holding was based upon the authority given to the servant by the law in case of an emergency, yet the liability could not be different in a case where the authority was expressly or impliedly given to him by the master. The cases of San Antonio & A. P. Ry. Co. v. Taylor, and Walker v. El Paso Electric Ry. Co., supra, are to the same effect and, in our opinion, the conclusion is inescapable that appellee, in asserting his claim for damages against the appellant, comes squarely within the doctrine thus announced, that is, he was a fellow servant of Manford Sandefur, and, under the common-law doctrine concerning the relations between a master and his servants, announced and adhered to by the courts of this state, he was not entitled to recover of appellant for the injuries he sustained because they were inflicted by the negligence of his fellow servant.

In answering these contentions of appellant, appellee contends that he was not a fellow servant with Manford Sandefur and cites as to Fifth Blashfield's Encyclopedia of Automobile Practice and Procedure, Perm.Ed., Part 16, Negligent Driving, Chapter 84, § 2989, and also the case of Commercial Credit Co. v. Groseclose, Tex. Civ.App., 66 S.W.2d 709. In the Blashfield text it is said that, where an unforeseen happening or emergency arises that makes it necessary for the servant in charge to have temporary assistance and to meet the emergency, and serve his master's interest, the servant calls upon a person for assistance and the person called upon responds thereto and, in performing the work requested, sustains an injury, the person assisting, in compliance with the request, is not a mere volunteer and the master, through his servant, owes to the person so assisting the duty of exercising ordinary care, citing Ohm v. Miller, 31 Ohio App. 446, 167 N.E. 482; Commercial Credit Co. v. Groseclose, Tex.Civ.App., 66 S.W.2d 709.

In the Ohm case, cited by Brashfield under the text above mentioned as authority for the expressions in the text, Ohm, a boy, 12 years of age, was asked by the driver of a truck belonging to Miller and his partner, who were handling flour in sacks, if he would like to ride in the truck with

the driver. The boy accepted the invitation and got into the cab. It was raining and the driver had placed a tarpaulin over the truck to protect the flour. When the rain stopped, he started with his load to deliver it to various customers and, while he was engaged in that duty, it again began to rain. He drove back to the garage where the truck was kept and attempted to back the truck into the garage. He requested Ohm to get out and guide him in this operation, which Ohm did and, through negligence of the truck driver in backing the truck, Ohm was injured and he brought suit against Miller and his partner for damages. The fellow servant doctrine was offered as a defense and the court held: "Even if he was a fellow servant, under section 6244, General Code, the fellow servant rule has no application where the negligent act of the fellow servant is 'done in obedience to the immediate or peremptory instructions or orders given by the employer, or any person who has authority to direct the doing of said act.'" [31 Ohio App. 446, 167 N.E. 484]

Thus it will be seen that, in that case, the recovery under the fellow-servant doctrine was precluded by a statute of the State of Ohio.

The case of Commercial Credit Co. v. Groseclose, cited by appellee and also cited as authority for the text in Blashfield, supra, is not in point for the reason that the question of fellow-servant was not involved. Groseclose was a passenger in a Dodge car being driven by one A. E. Morrison from Los Angeles, California, to Dallas. A few miles east of El Paso Morrison lost control of the car which resulted in a collision with a tree, and Groseclose was injured. He was not employed or requested to assist Morrison in doing anything about driving or handling the automobile. Since this case is cited as authority for the text in Blashfield, supra, it is evident the text has reference principally to injuries inflicted upon third persons not connected with the employer in any manner. Indeed, the text itself indicates that the writer of the text was dealing with such a situation.

In a case cited by appellee, the text in Paragraph 245, p. 785, of 18 R.C.L. is cited. That text pertains to injuries inflicted upon third persons by employees or those requested to assist employees in performing the work of the latter's master. It is therefore not in point here.

In reply to appellant's motion for rehearing, appellee has cited us to a list of twenty-one cases decided by the courts of this and other states and by the Federal Courts. We have examined all of them and in none of them do we find any holding contrary to the conclusions we have expressed. A number of them deal with the rights of invitees upon premises of others and others deal with the liability of the owner of premises to a licensee. Those cases are not in point and cannot affect the disposition which we must make of the instant case. In a number of the cases cited by appellee, the courts expressed the rules we have followed as being the law in cases such as this.

We have given this case more than the usual attention and examined many authorities not cited by either of the parties and not referred to in this opinion. We find ourselves impelled to the conclusion that appellee was not entitled to recover of the appellant because, in responding to the request of Manford Sandefur to assist Manford in the manner detailed above, appellee placed himself in the position of an employee of appellant even though he was not actually so employed and even though Manford had implied authority from appellant to enlist the assistance of the appellee. His injuries having resulted from the negligence of his fellow-servant, Manford Sandefur, appellee, was not entitled to recover of the appellant and the court erred in refusing to instruct the jury to return a verdict in appellant's favor as requested by him. It is evident from the record that the case was fully developed and we conceive of nothing that could be gained by another trial. The judgment of the court below will, therefore, be reversed and judgment here rendered that appellee take nothing by his suit.