Roy COSAR and Dickie Johnson, Plaintiffs in Error,

v.

John BEMO, Defendant in Error.

No. 36187.

Supreme Court of Oklahoma.

March 29, 1955.

Rehearing Denied April 19, 1955.

Appeal from the District Court of Seminole County; Robert Howell, Judge.

Action by plaintiff to recover damages against his employer and the employer's chauffeur for personal injuries he received in a collision the employer's auto had with another auto. From a judgment for plaintiff, defendants appeal. Affirmed.

Embry, Crowe, Tolbert, Boxley & Johnson, by V. P. Crowe, Oklahoma City, and Wells & Wells, by A. S. Wells, and William E. Bishop, Seminole, for plaintiffs in error.

Allen G. Nichols and Walter Billingsley, Wewoka, for defendant in error.

BLACKBIRD, Justice.

■ Dickie Johnson, who owns a farm in Seminole County, Oklahoma, does not have a driver's license, but owns a Dodge Sedan automobile and also a truck which is used in connection with his limited farming and cattle raising operations. The present action arose out of an automobile accident in which the Dodge Sedan was involved. John Bemo, plaintiff herein, had been employed by Johnson as a farm hand approximately two years when the accident occurred, and, Roy Cosar, driver of the Dodge, had been employed by Johnson as his chauffeur approximately three weeks. The other automobile involved in the accident, which occurred less than a mile and a half from the Johnson farm, was owned by the Emsco Company (referred to in the record as a "Drilling" Company, an "Equipment" Company, and a "Manufacturing" Company) and was driven by one of its employees, Charles Elbert Bush, who lost his life as a result thereof.

When the accident occurred in November, 1951, Bemo and Johnson's chauffeur, Cosar, riding alone in Johnson's Dodge Sedan were returning from a country store and filling station, where they had gone to cash a check for Johnson and procure gasoline for the car. Bemo's subsequent commencement of the present action was to recover damages against both Cosar and Johnson, as defendants, for personal injuries he suffered therefrom. All three parties will hereinafter be referred to as they appeared in the trial court.

Defendants pleaded that both plaintiff and Cosar were agents and employees of Johnson, acting within the scope of their employment at the time of the accident, and, at the close of plaintiff's evidence separately demurred to it. In support of the defendant Johnson's demurrer, it was urged that said evidence showed Cosar and plaintiff

were fellow servants. At the close of all of the evidence defendants renewed their objections by separate motions for a directed verdict.

Subsequently defendants moved the court to declare a mistrial after one of plaintiff's attorneys had told the jury, during his final argument, that the widow of the deceased Emsco Company's employee, Bush, had, in a previous death action in another court, obtained a verdict and judgment of $48,800 against the same defendants. Defendants' motion was overruled, and the jury returned a verdict against defendants in this action for $38,500. At the hearing of defendants' separate motions for a new trial, they were overruled upon condition of a remittitur suggested by the court and consented to by plaintiff's attorneys, reducing the amount of plaintiff's recovery by $15,000, and judgment was thereafter entered accordingly. From said judgment, defendants have lodged the present appeal.

The first proposition urged by defendants' counsel concerns the trial court's alleged errors in overruling the defendant Johnson's demurrer to the evidence and motion for directed verdict. The argument is the same as it was in the trial court, to-wit: That the fellow servant rule is applicable to exonerate Johnson, the employer, from all liability in the present case in the absence of a showing of any negligence on his part. It is plaintiff's position that the fellow servant rule does not apply here because of the difference between the duties of his employment and that of Cosar. His counsel argues Cosar was employed exclusively as a chauffeur, while plaintiff was just a farm hand. Most of the cases counsel cite are early ones from other jurisdictions, which are either distinguishable on the basis of their facts or apply a theory of the fellow servant doctrine not now adhered to in this jurisdiction. The trend of modern authority is away from making the application of the rule solely dependent upon differences in the duties of the injured employee and the one whose negligence caused his injuries. See Burroughs v. Michel, 142 Kan. 814, 52 P.2d 633; Atchison & Eastern Bridge Co., 71 Kan. 13, 80 P. 18, 1 L.R.A.,N.S., 682; 35 Am.Jur.,

"Master and Servant", sec. 331 et seq.; Restatement Of The Law, Agency, secs. 475, 480, 486 (Comments, p. 1139). We find it difficult, if not impossible however, to reconcile and harmonize the recent cases on the subject in the various jurisdictions. Carter v. Uhrich, 125 Kan. 192, 264 P. 31; Zarski v. Creamer, 317 Mass. 744, 59 N.E. 2d 704; Sandefur v. Sandefur, Tex.Civ. App., 232 S.W.2d 111, and Blanchard v. Gallahar, 72 Ga.App. 132, 33 S.E.2d 379, all cited by defense counsel are readily distinguishable on the basis of their facts from the case at bar (without regard to any inconsistencies in the application of their statements of the fellow servant rule) but Charles Weaver & Co. v. Harding, 182 Miss. 345, 180 So. 825 (also cited) is not so readily distinguishable, if at all, from cases like Haraway v. Mance, 186 Ark. 971, 56 S.W.2d 1023, and French v. Cherry, 186 Ark. 991, 57 S.W.2d 404 which reached opposite results. No Oklahoma case is cited, and we have found none directly in point. Stout v. Schell, 206 Okl. 153, 241 P.2d 1109, strongly relied upon by defendant, was an action brought by a truck driver's helper for injuries he suffered on account of his employer's alleged negligence. This court's affirmance of the trial court's judgment sustaining defendant's demurrer to the evidence upon application of the fellow servant rule to the facts of that case is in harmony with the opinions of other courts in similar cases. See, for instance, Boston v. Kroger Grocery & Baking Co., 320 Mo. 408, 7 S.W.2d 1006, and Black Diamond Lbr. Co. v. Smith, 190 Ark. 91, 76 S.W.2d 975. In all of the "driver's helper" or "companion driver" cases, as well as Carter v. Uhrich, supra, plaintiffs were truly fellow servants of the drivers and, at the time of the accidents involved, were actually engaged in duties in the course, and within the scope, of their employments in such a way that they could correctly be regarded as having assumed the particular risks involved, while here the situation is different. When the accident in the present case occurred, plaintiff was doing nothing shown to have been within the sphere of his regular duties as a farm hand; and we think it is of no controlling importance that he was shown to

have, on previous occasions, accompanied Cosar and Johnson, in the latter's truck driven by Cosar, to haul hay and corn for Johnson's livestock, and that Johnson had told plaintiff and Cosar they were to make another such trip after their return in the sedan from the country store and filling station on the day of the accident.

Apparently all three of the parties here involved were Seminole Indians. Plaintiff's limited knowledge of the English language is obvious from his testimony and he testified that he could neither read, write, sign his name, nor count to a hundred. He was an unskilled laborer. From the evidence it is reasonable to assume that he was not licensed for, nor capable of, operating a motor vehicle. He definitely was not employed to discharge the duties of a driver's or chauffeur's helper as distinguished from a farm hand or doer of chores on a farm. On the trip, during which the accident occurred, Cosar had complete control of the automobile in that he alone, as between the two alleged fellow servants, knew how to operate it and had the full power and authority to say how it should be operated. But notice the statement in Putnam v. Pacific Monthly Co., 68 Or. 36, 130 P. 986, 991, 136 P. 835, 45 L.R.A.,N.S., 338 L.R.A. 1915F, 782. Not only that but it was never shown that plaintiff had any duty whatsoever to perform in connection with that particular trip or that he had ever before been on that kind of a trip, during the period he had been employed by Johnson. While there was testimony, from which it could be inferred, that the employer, Johnson, intended and perhaps even instructed, plaintiff to accompany Cosar on the trip to the store and filling station, no reason for this ever appears. The only objects of the trip, i. e., to get Johnson's check cashed and obtain gasoline, were tasks that more properly came within the sphere of Cosar's regular employment. In some of these aspects of the case it is similar to Johnson v. Ladd, 138 Or. 371, 5 P.2d 1062, in which it was held that a gardener authorizedly driving his employer's automobile, and a nursemaid employee of the same employer were not fellow servants. Though we realize that some might regard the cited case as

within the same class as the so-called "domestic servant" cases; whose decisions lack harmony see Lamar v. Collins, 252 Ill.App. 238, and compare with Erjauschek v. Kramer, 141 App.Div. 545, 126 N.Y.S. 289, and other cases cited in the Annotations beginning at 48 A.L.R. 1295, and, in view of the difficulty in consistently applying some of the rules that have been announced regarding the fellow servant doctrine we hesitate to announce one here, but we think each case must be determined on the basis of its own individual facts. To the situation here presented, the fellow servant doctrine was not properly applicable and it presents no valid basis for the defendant Johnson's charge of error in the trial court's ruling on his demurrer to the evidence and motion for directed verdict.

This leaves for decision the question of the trial court's alleged error in refusing the motion of the defendant, Cosar (as well as Johnson) for the court to declare a mistrial. Said motion, as hereinbefore indicated, was based upon information conveyed to the jury by one of plaintiff's attorneys to the effect that Emsco Company's employee's widow, Mrs. Bush, had, in another case, recovered a verdict and judgment of $48,800 against Johnson and Cosar on account of Bush's death in the same accident. Plaintiff's counsel does not dispute the authorities cited by defense counsel to the effect that such conduct is ordinarily reversible error, but their argument is to the effect that in this case, it was not, because such error was invited. The record does not disclose the exact way in which defendants' attorney is said to have asked plaintiff's counsel the question referred to. Neither of the closing arguments of the respective counsel is incorporated in the case made. There is merely a court reporter's note or memorandum showing that plaintiff's attorney's statement was in answer to a portion of defense counsel's closing argument wherein "he asked, in substance, why the plaintiff didn't sue the Emsco Manufacturing Company, the company for whom Mr. Bush worked, * * *". The record discloses the objection made by plaintiff's counsel to such reference to an "incompetent, irrelevant and immaterial"

matter; that thereupon the court admonished the jury that it was "bound by the evidence you have heard from this stand * * *"; that then defense counsel was allowed to complete his argument, after which plaintiff's counsel made his closing argument and told the jury of the $48,800 verdict in the other case; that defense counsel then immediately moved the court to declare a mistrial on account of plaintiff's counsel's having conveyed this information to the jury; and that, before overruling this motion and allowing defendants an exception, the court gave the jury a second admonition telling them, in substance, that they were to disregard any statements made by counsel about the other "law suit."

■■ It is a well recognized principle of appellate review that a party should not be allowed to take advantage, on appeal, of an error he has invited at the trial; and the "fact that the * * * statement of facts not in evidence was provoked or invited by the adverse counsel has often been held to excuse the error." 3 Am.Jur., "Appeal and Error", sec. 1074. See also Taliaferro v. Reirdon, 186 Okl. 607, 99 P.2d 500; 5 C.J.S., Appeal and Error, §§ 1501, 1508, Note 71; 88 C.J.S., Trial § 194; 53 Am.Jur., Trial, sec. 468. Especially is this true where the error may be regarded as harmless or to have been cured by instructions or admonitions of the court. 3 Am. Jur., "Appeal and Error", sec. 1076, 14 Okl.Dig., Trial, ■■■■ From the record and the briefs it is clear that the information plaintiff's counsel gave the jury about the other law suit was in answer to, and invited by, the question defense counsel asked during his closing argument. The latter cites no authority showing that his own conduct in asking the question was proper but argues that his remarks "are really not in issue" since there was no proper record made of them, and claims that since the evidence showed the accident occurred when defendant's car collided with the Emsco Company's car there was "nothing wrong" with his suggesting that its driver "was to blame for the accident." We do not agree. Defense counsel knew that the driver of the Emsco car was killed in the collision (the record indicates he defended these same defendants in the other action brought by said driver's widow) and he is presumed to know that, notwithstanding any negligence on the part of that driver, plaintiff could sue defendants herein, that whoever he named as a defendant in this action was initially a matter of his and his attorneys' choice, and that whatever considerations figured into their making of this choice had no proper bearing or relevancy upon these defendants' liability and was not a proper subject of the jury's consideration in this case. Defense counsel's further argument is to the effect that the information plaintiff's counsel gave the jury in answer to his question was so prejudicial in its nature as to require reversal, even though the trial court admonished the jury not to consider it, Shaff v. Baldwin, 107 Cal.App.2d 81, 236 P.2d 634, 637, and this court might be in doubt as to whether the verdict was affected thereby—an argument that seems to find support in this court's opinion in Berry v. Park, 185 Okl. 118, 90 P.2d 425, and what was said concerning it, in Magnolia Pet. Co. v. Sutton, 208 Okl. 488, 257 P.2d 307. The Berry case, however, did not involve an "invited error", but involved the interrogation of jurors on voir dire examination with questions suggesting that the defendant had liability insurance, *where there were no circumstances to provoke or reasonably justify such interrogation.* We do not think that case is applicable here. Where misconduct of counsel occurs as retaliation, or by way of accepting the invitation of opposing counsel, there is an element of estoppel not present in cases like the cited one. See McKinney v. Red Top Cab Co., 113 Cal.App. 637, 299 P. 113, 116, where the court said:

"The rule is firmly established by numerous decisions that parties must abide by the consequences of their own acts and cannot seek a reversal of a case for error which they invited. In other words, one who by his own conduct invites error is estopped afterwards from complaining of the prejudicial effect flowing therefrom. (Citing authorities.)"

This court has held that in cases of the latter class, it must appear "quite plainly" that the verdict was influenced by the retaliatory remarks before it will be set aside on account thereof. Helmerich & Payne v. Nunley, 176 Okl. 246, 54 P.2d 1088. See also 88 C.J.S., Trial, § 194, and authorities cited under Notes 8, 9 and 12. If this were not the rule, one party's counsel would have unlimited license to prejudice the jury against his opponent's side of the case, and, if retaliatory measures were taken, keep obtaining additional trials until the verdict was satisfactory to him. In this connection, see Northern Arizona Supply Co. v. Stinson, 73 Ariz. 109, 238 P.2d 937, 939. Here, as hereinbefore noted, the trial court, by its instructions and/or admonitions took measures contemplated to appropriately guard against the jury's being biased or prejudiced for, or against, either of the parties by the objectionable portions of their attorneys' arguments. What should be done in such situations must of necessity be dictated in the first instance by the sound discretion and judgment of the trial judge. Hazelrigg Trucking Co. v. Duvall, Okl., 261 P.2d 204, 210; Walker v. Penner, 190 Or. 542, 227 P.2d 316; 3 Am.Jur., "Appeal and Error", sec. 973. To disturb the verdict thereafter rendered in a case like this, it should appear that such discretion has been abused or that the measures taken were inadequate. The instructions this trial judge gave the jury appear quite adequate to accomplish their contemplated purpose. To say it appears "quite clearly" that the jury did not follow them, we must so conclude without any concrete showing to the contrary. In this connection, see Hazelrigg Trucking Co. v. Duvall, supra.; 5 C.J.S., Appeal and Error, § 1562, at Note 25. We cannot do that, especially, where as here, our thorough examination of the record discloses sufficient evidence to support a verdict in plaintiff's favor and the judgment sought to be reversed, but does not purport to depict verbatim the attorney's argument, or even the portions thereof in controversy. The trial judge, however, heard them and was in a position to observe the cirumstances surrounding the particular utterances in controversy. Then too, the alleged "misconduct of plaintiff's attorney in his closing argument to the jury" was one of the asserted grounds for a new trial in defendants' separate motions therefor. In this situation we are impelled to the view expressed by the Court in McKinney v. Red Top Cab Co., supra:

" * * * the trial court in the present action was alert to prevent any transgression of the rules of legitimate argument, and, having personally witnessed all of the circumstances attending the incident, was in a position to say, at the time this point was stressed by defendants on motion for a new trial, whether the deliberations of the jury were unduly influenced by the remark complained of, and, having decided that they were not, there is nothing in the record to justify this court in holding to the contrary."

While this Court has never, and does not now, condone improper statements like those of counsel here that ordinarily would constitute ample justification for a trial court's declaration of a mistrial, 53 Am.Jur., "Trial", sec. 489, under the circumstances indicated by this record, we do not feel warranted in disturbing the judgment.

As we have found none of the alleged errors urged by defendants, sufficient justification for setting said judgment aside, it is hereby affirmed.

CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, J., dissent.

WELCH, Justice (dissenting).

It seems to me there are five questions which are important in this case, and more important as precedent for future trial, as follows:

1. In an automobile negligence action involving a two car collision at a highway intersection where one of the prime issues

was which car was negligently driven to cause the accident, is it error for the plaintiff's attorney to argue and state to the jury as a positive fact that another action involving the same accident brought by another party against the same defendant had already been tried, and there determined that the defendant in the present action was negligent and that it was his negligence and not the negligence of the other car which caused the collision presently involved?

2. Was such improper argument prejudicial?

3. Was defendant then entitled to a mistrial before verdict?

4. After verdict, was the error of this improper argument cured by order striking $15,000 from a $38,500 verdict by remittitur or was defendant entitled to a new trial?

5. Can it be said that this improper argument was an invited error and that defendant cannot complain of it because he invited it? The essential facts on this point are that it was a prime issue as to which car negligently caused the intersection collision, and that issue of fact was presented in the instructions to the jury. Defendant contended in pleading and in evidence that the other car was at fault, and in presenting that question or issue to the jury the defendant argued that the collision was the fault of the other car and merely posed the argumentative question as to why plaintiff had not sued the owner and operator of the other car. This is contended by some to be a complete and specific invitation of the improper argument above mentioned.

When plaintiff's attorney, in his closing argument to the jury, emphatically stated and presented positive detailed and conspicuous facts, bearing directly upon one of the prime fact issues involved in the case, which facts so stated were in no wise presented in evidence, and which facts could not have been admitted if they had been offered in evidence, and which facts so improperly stated were such as would almost certainly influence the jury in its verdict and in the amount thereof, then I think the defendant was entitled to an order of mistrial and that the trial court erred in denying motion for an order of mistrial before jury verdict.

When, after jury verdict, it was apparent that such improper statement and presentation of settled facts did wrongfully influence the jury in its verdict and in the amount thereof, then I think the court erred in overruling defendants' motion for a new trial on that ground.

I do not think that these errors were cured merely by the reduction of the verdict and judgment from $38,500 to $23,500.

This action involves personal injuries received by plaintiff Bemo in an automobile collision at a highway intersection. Bemo and defendant Cosar were both employees of defendant Dickie Johnson. At the time of the accident they were riding in an automobile owned by their employer Dickie Johnson. Cosar was driving that car and there was a collision with another automobile driven by a Mr. Bush, an employee of Emsco Mfg. Company. In that accident plaintiff Bemo was injured and the driver of the car, Mr. Bush, was killed.

In this action one of the principal issues of contention was whether Cosar was negligent in driving the Johnson car, or whether Mr. Bush was negligent in driving the Emsco car. The defendants here specifically contend that Cosar was not negligent, but that the collision was caused by the negligent driving of the other car. The importance of this issue is further demonstrated or magnified by the fact that the record shows conflicting statements on the part of plaintiff Bemo himself as to whether Cosar then drove the Johnson car at a high and dangerous rate of speed, or whether he then drove slowly and carefully.

At the end of the trial, in the closing argument to the jury for defendant, his attorney posed the oratorical or argumentative question as to why the plaintiff in this action had not sued Emsco for his injury and damage in the collision of the two cars instead of suing Johnson and the driver of his car. Thereafter, in closing argument to the jury for plaintiff, his counsel stated to the jury, as a settled fact, that the de-

fendants' attorneys in this case, naming two of them, "had defended a case at Seminole, Oklahoma, in which the jury had returned a verdict in favor of Mrs. Bush and against these defendants for $48,800.00" and that was stated as one of the reasons why plaintiff had not sued Emsco.

Thus plaintiff's counsel advised this jury as to a very interesting fact which had not been presented in evidence, and which of course could not have been admitted in evidence if it had been offered, and the effect of this statement was to advise this jury that it had been formerly judicially determined by jury verdict and judgment that, in this self same accident, Mr. Bush driving the Emsco car was not negligent, and that Mr. Cosar driving the Johnson car was negligent and that his negligence caused the collision.

When prominent counsel for the plaintiff made that statement the jurors were doubtless impressed by it, and I think all would agree that the statement was improper and prejudicial. (This is not contradicted by the majority opinion. It is the position of the majority opinion that this answer was sufficiently provoked by defendants' counsel as to make this an invited error, but I do not believe the mere propounding of this argumentative question was a sufficient justification for plaintiff's counsel to go to the extent he did go in pointing out to the jury that the prime question which this jury was called on to determine had theretofore been determined by another jury in the same county, and telling how it had been determined by that jury, and the amount of the verdict carried by that former determination of the same vital issue pending in this case.

It is true that when defendants' counsel first posed the argumentative question there was objection and the court instructed the jury they should rely only on the evidence in this case to determine the issues, and again when plaintiff's counsel made the above quoted improper argument the court again instructed the jury to rely only upon the evidence in this case and not to consider any other law suit, but it strains credulity too far to assume that the jury in this case,

in its deliberations, could have forgotten or disregarded the striking fact that a former determination had been made of this identical issue, and to the extent of a verdict for $48,800. This brief statement of the trial judge, with nothing more, might have been taken as confirming the truth of the statement as to the former action, though admonishing the jury to disregard that fact.

While the trial court no doubt intended to cure the error I think its reference to "any other law suit" only tended to emphasize the error. I take this last sentence from the language in Bratt v. Smith, 180 Or. 50, 175 P.2d 444–448. That decision, by analogy, supports my view here, as do other decisions now cited. In Central of Ry. Co. v. White, 49 Ga.App. 290, 175 S.E. 407, the improper argument referred to other and different negligence actions. There the trial court rebuked counsel for making the improper argument and instructed the jury to disregard it, nevertheless, it was held reversible error to overrule motion for mistrial.

In Gulf, Mobile & Northern Ry. Co. v. Weldy, 195 Miss. 345, 14 So.2d 340, the improper argument referred to a former trial and verdict as to the same facts in issue. In this case the presentation of defendant's evidence disclosed that there had been a former trial, but not the result of the former trial. The plaintiff's improper argument there did not go to the full extent of detailing the result of the former trial as was done in this Cosar case, but counsel for plaintiff did by implication tell the jury that the verdict in the former trial had been for plaintiff. When defendant objected to the argument and the objection was overruled as in this Cosar case, apparently the defendant did not present motion for a mistrial, nevertheless, the improper argument was held to constitute reversible error.

In Louisville & N. Ry. Co. v. Patterson, 77 Ga.App. 406, 49 S.E.2d 218, the improper argument referred to the decision of a companion case arising out of the same accident. There it does not appear whether the jury was instructed to disregard the im-

proper argument or not, it was merely held to be error to refuse to grant a mistrial because of the improper argument.

In Bratt v. Smith, supra, the trial court instructed the jury to disregard counsel's statement, but nevertheless, it was held error to overrule motion for mistrial.

In Bagully v. Morning Journal Association, 38 App.Div. 522, 56 N.Y.S. 605, the improper argument referred to another and separate suit of the same character as the one on trial, and stated the amount of the verdict. The court held that was improper. Plaintiff's attorney then withdrew his remarks and asked the jury not to consider them and the court charged the jury not to consider the matters stated. Nevertheless, the appellate court held there was prejudicial error and reversed.

I am convinced that the trial court here should have granted defendants' motion for a mistrial. It may well be that the trial court recognized the error and prejudice in this improper argument, and that such recognition thereof caused or played a part in causing the remittitur order. The trial court on motion for new trial, overruled the motion, but did require a remittitur of $15,000 of the $38,500 verdict rendered in this case. The record does not affirmatively disclose that this remittitur was based upon this ground of misconduct, but there is nothing else disclosed in the record, or in the majority opinion upon which it could have been based. The judge merely stated that "the court suggests a remittitur of $15,000.00" to which plaintiff's counsel at once agreed. It is fair to assume that the trial court fully appreciated the error and prejudice of this improper argument to the jury, and observed the effect thereof upon the jury, as demonstrated by its verdict. The apparent desire of the trial court to correct this error is quite commendable, but the conclusion that such an error could be cured by mere remittitur of a minor portion of the verdict cannot be approved by any cited authority. The correction should have been made by granting a new trial.

JOHNSON, C. J., and WILLIAMS, V. C. J., join in these views.